UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Cynthia E. Duncan

    v.                                          Civil No. 12-cv-431-JL
                                                  Opinion No. 2013 DNH 139
Carolyn Colvin, Acting Commissioner,
Social Security Administration

**ORDER ON APPEAL**

Cynthia Duncan appeals the Social Security Administration's ("SSA") denial of her applications for a period of disability and disability insurance benefits. An administrative law judge at the SSA ("ALJ") ruled that, despite Duncan's severe impairments of bipolar disorder, degenerative disc disease of the lumbar spine, and degenerative joint disease of the right knee, she retains the residual functional capacity to perform jobs that exist in significant numbers in the national economy, and, as a result, is not disabled. See 20 C.F.R. §§ 404.1505(a). The Appeals Council later denied Morris's request for review of the ALJ's decision, see id. § 404.968(a), with the result that the ALJ's decision became the SSA's final decision on Duncan's applications, see id. § 404.981. Duncan then appealed the decision to this court, which has jurisdiction under 42 U.S.C. § 405(g) (Social Security).

Duncan has filed a motion to reverse the decision. See L.R. 9.1(b)(1). She argues that the ALJ, in concluding that she was capable of working as either a cashier or an unarmed security guard, erred by relying upon the testimony of a vocational expert, rather than the Dictionary of Occupational Titles ("DOT"), as to the prevalence and demands of those occupations. The Commissioner of the SSA maintains that the ALJ committed no error and has cross-moved for an order affirming the decision. See L.R. 9.1(d). After careful consideration, the court agrees with the Commissioner, and thus grants her motion to affirm (and denies Duncan's motion to reverse) the ALJ's decision.

As he was required to do, the ALJ evaluated Duncan's claim of disability in accord with the five-step sequential process set forth in 20 C.F.R. § 404.1520(a)(4). The ALJ first determined that (1) Duncan was not engaged in substantial gainful activity; (2) she had the severe impairments referred to above; (3) those impairments did not meet or equal a listed impairment; and (4) in light of her residual functional capacity, Duncan was not able to perform her past relevant work. See id. The ALJ then concluded, at step five of his analysis, that Duncan remained capable of performing jobs that exist in significant numbers in the national economy, and was therefore not disabled. Specifically, as

already noted, the ALJ concluded that Duncan was capable of working as a cashier or an unarmed security guard.

The ALJ based this conclusion--which is the only ruling Duncan challenges on appeal[1]--in large part upon testimony from a vocational expert at the administrative hearing.  Relaying the results of his residual functional capacity analysis, the ALJ posed the following hypothetical question to the expert:

> Consider the claimant's age, she's still a younger individual under the regulations, consider her 11 years of high school plus a GED, consider the one job [that she held previously, as a painter].  Assume that she would be limited to no more than light work, that the light work would be further limited [by] a need for a sit/stand option approximately every 30 minutes.  Further limited by the ability to perform postural activity on an occasional basis.  Also no pushing or pulling against any resistance with the lower extremities because of her knee.  She would be limited to simple, routine, repetitive tasks.  There should be minimal if any interaction with the public and coworkers.  She would need a stable work environment, by that I mean one in which there would be very little change in the work process from day to day.  She should not be exposed to any fast paced or production type work.  Let me stop there with this hypothetical. . . . Would there be other work?

Admin. R. at 56-57.

In response, the vocational expert opined that, with the limitations in question, Duncan could still work as an unarmed security guard.  <u>Id.</u> at 57.  He testified that there were 1,875

---

[1]Duncan does not argue that the ALJ erred in performing steps 1-4 of his analysis, nor does she contend that his assessment of her residual functional capacity was flawed.

3

such positions in the local area,[2] and 375,000 nationally. Id. The expert further testified that these numbers represented "a small fraction of the total amount . . . of all the unarmed security guard jobs that exist," explaining that although the DOT classifies the position of unarmed security guard under a single number as "light, semi-skilled," the position encompasses "a wide range of types of work," including some unskilled jobs. Id. at 58-59. In addition, the expert testified, there were also 825 local and 165,000 national "cashier jobs where you [have a] sit/stand option that have limited people, like if you're in the night shift and you may go 30 to 45 minutes between customers." Id. at 59. Duncan's counsel did not cross-examine the expert on this, or any other, point.

The ALJ adopted the expert's testimony in his written opinion, finding that Duncan "was capable of making a successful adjustment to other work"--specifically, the security guard and cashier jobs the expert identified--"that existed in significant numbers in the national economy." Id. at 24. Acknowledging that the expert's testimony was "inconsistent with the information contained in the [DOT]," the ALJ nonetheless found that there was

---

[2] The local area to which the expert referred was "the greater Hampton Roads area including northeastern North Carolina," Admin. R. at 57, which was where Duncan lived at the time of the hearing.

4

"a reasonable explanation for the discrepancy."  Id. (citing Social Security Ruling ("S.S.R.") 00-04p, Titles II and XVI: Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions, 2000 WL 1898704 (S.S.A. 2000)).  He continued:

> [The vocational expert] testified that his testimony was consistent with information in the DOT except that the DOT classifies the guard job as semi-skilled[.] The numbers he cited [for] this job represent a small fraction of the total number of guard jobs and these numbers represent the positions he knows are unskilled based on his filed [*sic*] experience.  Therefore, the undersigned gives [the vocational expert's] testimony full weight.

Id.

Duncan attributes several missteps to the ALJ in reaching this conclusion.  First, Duncan argues that the ALJ erred by failing to cite or rely upon the DOT in his written decision, despite 20 C.F.R. § 404.1566(d), which provides that the SSA "will take administrative notice of reliable job information available from various governmental and other publications," including the DOT.  In order "to carry its step five burden of identifying jobs existing in significant numbers," Duncan asserts, the SSA must make "reference to one or more of the several publications identified in 20 C.F.R. § 404.1566(d)."  Duncan is incorrect.  "It is not a requirement that the ALJ rely upon or cite to DOT classifications," or to any other source

cited in § 404.1566(d).  Rivera v. Astrue, No. 12-cv-1095, 2013 WL 4507081, at *10 (D. Md. Aug. 22, 2013); see also, e.g., Tetrault v. Astrue, No. 09-cv-11390, 2011 WL 613701, at *5 (D. Mass. Feb. 11, 2011) ("While the DOT codes are often used as evidence in ALJ decisions, they are not necessarily required."). To the contrary, both § 404.1566(e)[3] and the SSA's ruling regarding the use of vocational experts provide that the ALJ may eschew reliance on the DOT or a similar source in favor of testimony by a vocational expert--provided that the ALJ identifies and resolves any conflict between the DOT and the expert's testimony "by determining if the explanation given by the [expert] is reasonable and provides a basis for relying on the [expert] testimony rather than on the DOT information." S.S.R. 00-04p, 2000 WL 1898704, at *2.

Duncan also maintains that the ALJ strayed from this directive because he "never determined whether the explanation for the conflict [between the expert's testimony and the DOT] was reasonable." This argument is simply counterfactual. As discussed above, the ALJ's written opinion specifically noted that "the vocational expert's testimony is inconsistent with the

---

[3] 20 C.F.R. § 404.1566(e) provides that the SSA "may use the services of a vocational expert or other specialist" in order to determine "whether [a claimant's] work skills can be used in other work and the specific occupations in which they can be used," or to resolve "a similarly complex issue."

information contained in the [DOT]," but concluded that there was "a reasonable explanation for the discrepancy." Admin. R. at 24 (citing S.S.R. 00-04p, 2000 WL 1898704).

Finally, Duncan attempts to poke holes in the ALJ's finding that the vocational expert's explanation for the discrepancy was reasonable. She suggests that the ALJ's reliance on the expert's field experience, without further explanation, was inappropriate. But S.S.R. 00-04p expressly notes that an ALJ may rely upon a vocational expert's "experience in job placement or career counseling" in choosing to credit the expert's testimony over conflicting information in the DOT. 2000 WL 1898704, at *2. The record here reveals that the testifying expert had ample training and experience, having received a master's degree in vocational rehabilitation counseling and worked in that field for over 20 years. See Admin. R. at 125-26. The ALJ was therefore justified in relying upon the expert's testimony (particularly where Duncan's counsel did not question the expert's qualifications at the hearing, or, for that matter, cross-examine him on any point).

Duncan also suggests that the expert's testimony concerning the total number of unarmed security guard and cashier jobs--and the requirements of those jobs--lacked a reliable statistical basis. In support of this argument, Duncan has submitted

7

portions of Occupational Employment Quarterly II 2.0 and The Specific Occupational Selector Manual that, she contends, contradict the expert's testimony as to those numbers. Duncan did not submit either of these publications to the ALJ at any time before he rendered his decision, nor are they among the publications identified in 20 C.F.R. § 404.1566(d) as containing "reliable job information" of which the SSA "will take administrative notice." Duncan also failed to bring any conflict between them (or the DOT) and the expert's testimony to the ALJ's attention. This is fatal to her argument, as an "ALJ need only resolve such conflicts where they are apparent and have been identified." Montore v. Astrue, 2012 DNH 131, at 20 (quoting Aho v. Comm'r of Social Sec. Admin., No. 10-cv-40052, 2011 WL 3511518, at *14 (D. Mass. Aug. 10, 2011)). Where, as here, a conflict is not apparent and the claimant's counsel did not deem any such conflict "sufficient to merit adversarial development in the administrative hearing," the claimant "will not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as

reversible error."[4]  Id. (quoting Gibbons v. Barnhart, 85 Fed. Appx. 88, 93 (10th Cir. 2003)).

In sum, none of Duncan's challenges to the ALJ's decision is meritorious.  Her motion to reverse that decision[5] is accordingly DENIED, and the Commissioner's motion to affirm it[6] is GRANTED. See 42 U.S.C. § 405(g).  The clerk shall enter judgment accordingly and close the case.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated: October 17, 2013
cc:  David J. Strange, Esq.
     T. David Plourde, Esq.

---

[4] Duncan also speculates wildly about the job requirements of an unarmed security guard or cashier, reasoning that one of the security guard positions identified in The Specific Occupation Selector Manual "likely requires extensive contact with the public," that it is unlikely that "any security guard position would permit an employee the ability to sit every 30 minutes as required by the ALJ's hypothetical," and that a position as a cashier would presumably require more than "minimal if any interaction with the public and coworkers."  None of these propositions are self-apparent, and Duncan has identified no authority that would allow this court to disregard the testimony of a qualified vocational expert, unchallenged by the claimant before the ALJ, in favor of the claimant's post-hearing conjecture about the requirements of various jobs.

[5] Document no. 8.

[6] Document no. 9.